IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
MOBILE DIVISION

| | | |
|---|---|---|
| **Lashunna Wilson, as administrator and personal representative of THE ESTATE OF WILLIAM HENRY HARRIS, Jr. deceased.** | ) ) ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CASE NO.:** |
| **Vs.** | ) | **1:18-cv-00461** |
| | ) | |
| **WARDEN CYNTHIA STEWART, WARDEN TERRY RAYBON, SANDRA DAILEY, REGINA BOLAR, RASHUN JOHNSON, KENNETH MASON, TRACY CRAFT, NATHAN McQUIRTER, ARTHUR LONG, RAMONA GARRICK, Dr. PATRICK ARNOLD, AND CORIZON HEALTH, INC.** and Fictitious Defendants A through Z, the true legal names of whom with reasonable diligence are unknown, are those individuals, person, firm, corporation or other legal entity responsible for hiring, training, supervising, and retaining as employees Defendants WARDEN CYNTHIA STEWART, WARDEN TERRY RAYBON, SANDRA DAILEY, REGINA BOLAR, RASHUN JOHNSON, KENNETH MASON, TERRY CRAFT, NATHAN McQUIRTER, ARTHUR LONG, RAMONA GARRICK, DR. PATRICK ARNOLD, AND CORIZON HEALTH, INC. and all individuals, person, firm, corporation or other legal entity responsible for deliberately indifferent, wanton and/or tortuous manner failed to provide medical care with regard to Plaintiff in | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **Plaintiff Demands Trial By Struck Jury** |

| the acts or omissions described more fully herein; | ) |
| all of whose true names are otherwise unknown | ) |
| but will be added by amendment when | ) |
| ascertained, | ) |
| | ) |
| **Defendants.** | ) |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

**COMES NOW** the Plaintiff Lashunna Wilson, as Administrator and Personal Representative of The Estate of William Henry Harris, Jr., by and through her attorneys of record and for Complaint shows unto this honorable court as follows:

## I.      Introduction:

1.      This is a civil action for compensatory and punitive damages. Plaintiff requests this honorable court declare that the acts and/or omissions committed by the defendants were unconstitutional under the United States Constitution and the Alabama Constitution, and by an award of compensatory and punitive damages, compensate him for the violations of his constitutional rights sufficient to deter the defendants from committing further such unconstitutional acts and/or omission.

## II.      Jurisdiction and Venue:

2.      This action arises under and is brought pursuant to the laws of the State of

Alabama *Section 6-5-410* and the United States of America *42 U. S. C., Section 1983*

through *Section 1988(a)* to remedy deprivations, while acting under the color of state

law, of civil rights guaranteed by the Eighth and Fourteenth Amendments to the

United States Constitution.  This court has jurisdiction over this action pursuant to

*Ala. Code §12-11-30 (1975)* and *28 U. S. C. Sections 1331* and *1343*.

3.      Venue in this action is proper pursuant to *28 U. S. C. Sections 1393(b)* in that

a substantial part of the events or omissions giving rise to the plaintiff's claim

occurred in the Southern District of Alabama.

### III.    <u>The Parties</u>:

4.      The plaintiff, Lashunna Wilson (hereinafter Wilson), is the duly appointed

Administrator and Personal Representative of the Estate of William Henry Harris,

Jr., deceased, having been granted *Letters of Administration* vis-a-vie the Judge of

Probate of Jefferson County in case no. PC17BES00591.  At all times pertinent

hereto Wilson is a resident of Jefferson County, Alabama and is over the age of

nineteen (19) years.

5.      William Henry Harris, Jr., deceased, (hereinafter Harris), was a resident of

Jefferson County, Alabama, over the age of nineteen (19) years and at all times

pertinent to this complaint Harris was confined to the custody of the Alabama Department of Corrections and incarcerated at the Holman Correctional Facility.

6.     Defendant Cynthia Stewart (hereinafter Stewart) is an individual over the age of nineteen years who is believed to be a resident of the State of Alabama.  At all times pertinent to the complaint, Stewart was working as a Warden III at Holman Correctional Facility during the time the events occurred giving rise to the basis of plaintiff's complaint and was responsible for the overall operation of the facility. This defendant is being sued in her individual capacity.

7.     Defendant Terry Raybon (hereinafter Raybon) is an individual over the age of nineteen years who is believed to be a resident of the State of Alabama.  At all times pertinent to the complaint, Raybon was working as a Warden I at Homan Correctional Facility during the time the events occurred giving rise to the basis of plaintiff's complaint and was responsible for the overall operation of the segregation unit.   This defendant is being sued in his individual capacity.

8.     Defendant Sandra Dailey (hereinafter Dailey) is an individual over the age of nineteen years who is believed to be a resident of the State of Alabama.  At all times pertinent hereto, Dailey was working as a Lieutenant at Holman Correctional

Facility during the time the events occurred giving rise to the basis of plaintiff's complaint and was responsible for the operation of the segregation unit.    This defendant is being sued in her individual capacity.

9.    Defendant Regina Bolar (hereinafter Bolar) is an individual over the age of nineteen years who is believed to be a resident of the State of Alabama.  At all times pertinent hereto, Bolar was working as a Lieutenant at Holman Correctional Facility during the time the events occurred giving rise to the basis of plaintiff's complaint and was responsible for the operation of the segregation unit.    This defendant is being sued in her individual capacity.

10.    Defendant RaShun Johnson (hereinafter Johnson) is an individual over the age of nineteen years who is believed to be a resident of the State of Alabama.  At all times pertinent hereto Johnson was working as a Sargent at Holman Correctional Facility on the segregation unit during the time the events occurred giving rise to the basis of plaintiff's complaint and was responsible for the operation of the segregation unit.  This defendant is being sued in his individual capacity.

11.    Defendant Kenneth Mason (hereinafter Mason) is an individual over the age of nineteen years who is believed to be a resident of the State of Alabama.  At all

times pertinent hereto Mason was working as a Correctional Officer at Holman Correctional Facility on the segregation unit during the time the events occurred giving rise to the basis of plaintiff's complaint and was responsible for monitoring inmates on the segregation unit.  This defendant is being sued in his individual capacity.

12.   Defendant Tracy Craft (hereinafter Craft) is an individual over the age of nineteen years who is believed to be a resident of the State of Alabama.  At all times pertinent hereto Craft was working as a Correctional Officer at Holman Correctional Facility on the segregation unit during the time the events occurred giving rise to the basis of plaintiff's complaint and was responsible for monitoring inmates on the segregation unit.  This defendant is being sued in his individual capacity.

13.   Defendant Nathan McQuirter (hereinafter McQuirter) is an individual over the age of nineteen years who is believed to be a resident of the State of Alabama.  At all times pertinent hereto McQuirter was working as a Correctional Officer at Holman Correctional Facility on the segregation unit during the time the events occurred giving rise to the basis of plaintiff's complaint and was responsible for monitoring inmates on the segregation unit.  This defendant is being sued in his individual capacity.

14.     Defendant Arthur Long (hereinafter Long) is an individual over the age of nineteen years who is believed to be a resident of the State of Alabama.  At all times pertinent hereto Long was a Registered Nurse working for Corizon Health, Inc. at Holman Correctional Facility during the time the events occurred giving rise to the basis of plaintiff's complaint.  Long was responsible for assessing inmates' medical needs and coordinating care as prescribed by a licensed physician.  This defendant is being sued in his individual capacity.

15.     Defendant Ramona Garrick (hereinafter Garrick) is an individual over the age of nineteen years who is believed to be a resident of the State of Alabama.  At all times pertinent hereto Garrick was a Licensed Practicing Nurse working for Corizon Health, Inc at Holman Correctional Facility during the time the events occurred giving rise to the basis of plaintiff's complaint.   Garrick was responsible for assessing inmates' medical needs and coordinating care as prescribed by a licensed physician.  This defendant is being sued in his individual capacity.

16.     Defendant Dr. Patrick Arnold (hereinafter Arnold) is an individual over the age of nineteen years who is believed to be a resident of the State of Alabama.  At all times pertinent hereto Long was a licensed physician working for Corizon Health, Inc. at Holman Correctional Facility during the time the events occurred giving rise

to the basis of plaintiff's complaint.   Arnold was responsible for diagnosing and treating inmates' medical needs.   This defendant is being sued in his individual capacity.

17.   Defendant Corizon Health, Inc. (hereinafter "Corizon") is a foreign corporation registered to do business in the State of Alabama.   At all times pertinent hereto Corizon was responsible for providing medical services at Holman Correctional Facility during the time the events occurred giving rise to the basis of plaintiff's complaint.

18.   While committing the unconstitutional and wrongful conduct complained of herein, each of the defendants were acting under color of state law, and pursuant to the customs, policies or practices of the Alabama Department of Corrections, said defendants were further acting as agents for Alabama Department of Corrections within the line and scope of their purported authority.

19.   Fictitious Defendants A-Z, the true legal names of whom with reasonable diligence are unknown, are those individuals, persons, firms, corporations or other legal entity responsible for hiring, training, supervising, and retaining as employees Defendants WARDEN CYNTHIA STEWART, WARDEN TERRY RAYBON,

SANDRA DAILEY, REGINA BOLAR, RASHUN JOHNSON, KENNETH MASON, TERRY CRAFT, NATHAN McQUIRTER, ARTHUR LONG, RAMONA GARRICK, Dr. PATRICK ARNOLD, and CORIZON and all individuals, person, firm, corporation or other legal entity responsible for deliberately indifferent, wanton and/or tortuous manner failed to provide medical care with regard to Plaintiff in the acts or omissions described more fully herein; all of whose true names are otherwise unknown but will be added by amendment when ascertained.

## IV.   Factual Allegations Common to, and Incorporated into by Reference, Each Cause of Action

20.     On April 30, 2009 Harris was sentenced to life without parole for having been found guilty of committing multiple crimes.

21.     Following pronouncement of his sentence, Harris was remanded to the custody of the Alabama Department of Corrections and subsequently transferred to the Holman Correctional facility located in Escambia County, Atmore, Alabama.

22.     While serving his sentence, Harris was assigned by prison officials to a cell within the segregation unit where he remained until his untimely demise.

23.    During his time in segregation, Harris was prohibited from interacting with other prisoners and was under the direct supervision of correctional officers.

24.    If Harris was being transported to another area of the prison he was placed in leg shackles and handcuffs.  If Harris was using the shower, he was never allowed or permitted to leave their sight.

25.    Despite the obvious restraints and restrictions which prohibited Harris from having contact with anyone else other than prison officials, Harris was purportedly provided illicit drugs, notably, methamphetamine.

26.    In the morning hours of January 21, 2017, Harris complained to C/O Mason that he was ill.

27.    C/O Mason escorted Harris to the infirmary.  On the way there, Harris had difficulty walking and asked to be given a wheelchair.

28.    At the infirmary, the medical providers determined that Harris appeared to be high on something, and that Harris was complaining of a sore throat as well as bleach in his cell.

29. Despite making this determination, LPN Garrick did not document or report her

determination in the nursing notes and did not report these findings to the facility physician Dr. Arnold Patrick.

30.     Alternatively, LPN Garrick reported her findings regarding Harris to Dr. Patrick, and Dr. Patrick failed to offer any treatment plan to address Harris's condition or otherwise document the report or treat Harris.

31.     Harris was examined at the infirmary by RN Long.  Harris's speech was slurred, he was stumbling and unsteady on his feet and had to use a wheelchair to get to the infirmary, and he complained that he was having difficulty swallowing and had been exposed to bleach in cell.

32.     Despite the fact that Harris exhibited these symptoms, Nurse Long did not contact a physician or nurse practitioner.

33.     Instead, Nurse Long noted that Harris smelled of bleach, that he had a resting heart rate of 113, that his blood pressure was elevated, and sent Harris back to his cell where he died thereafter.

34.     On the evening of January 21, 2017, Sgt. Johnson, and CO Mason, Craft, and McQuirter were assigned to monitor inmates on the segregation unit at Holman Correctional Facility.

Days prior to, and leading up to his death, Harris had complained to pill call nurses that he was suffering from pains in his chest.

35.    At or near 6:00 p.m. that evening, Harris began to experience excruciating chest pain and made an urgent request for medical care.

36.    While waiting in his cell to receive medical care, Harris's symptoms escalated, and he attempted to gain the attention of the correctional officers by crying loudly for help.

37.    After several minutes without any response, Harris asked the other inmates on the segregation unit for help.

38.    The inmates housed on the segregation unit began to bang and kick their cell doors and scream loudly "man-down", but the guards, who could be seen sitting in the cubicle, refused to respond.

39.    The inmates on the segregation unit continued to bang and kick on their cell doors and yell "MAN-DOWN" for over an hour, yet the guards refused to come to Harris' aide.  Some of the inmates redoubled their efforts to obtain assistance for Harris by flooding their cells with water and lighting their mattresses on fire.

40.     It was common practice, custom, or policy for correctional officers at Holman Correctional Facility to ignore inmates' pleas for medical help.

41.     In response to the official practice, custom, or policy of the prison officials to ignore inmates' pleas for medical assistance, the inmates adopted a practice of yelling "man-down," flooding their cells with water, and setting their mattresses on fire to gain the guards attention.

42.     By the time the guards finally relented and checked on Harris, he was lying on the floor, where he had been for hours, and was non-responsive.

43.     Even after having witnessed Harris lying, unresponsive, on the floor of his cell, the guards purposefully failed or refused to notify assigned medical staff of the emergency.  By the time the guards notified medical of his condition, it was after 2 A.M. the following morning and Harris was dead, and rigor mortis had set in.

44.     Rather than rush Harris to infirmary or initiate life-saving medical care to revive him, the guards let Harris die in his cell, and then left Harris's body in his cell until 6:00 A.M. when he was finally taken to the infirmary.

45.     Two days later, an autopsy was performed by the Department of Forensics who listed the cause of death as toxic effects of methamphetamine.

46.     Pursuant to the Alabama Department of Corrections established policy, inmates can obtain "access to emergency medical care by notifying any ADOC staff, who will then notify the assigned health care staff."

47.     With deliberate indifference to Harris's serious medical needs, and while acting under color of state law, Sgt. Johnson and Correctional Officers Mason, Craft, McQuirter knowingly failed or purposefully refused to respond to indications that Harris was in acute medical distress and to notify assigned health care staff such that Harris could receive life-saving emergency medical treatment.

48.     But for Sgt. Johnson and Correctional Officers Mason, Craft, and McQuirter's complete disregard for Harris's emergent, serious and life-threatening medical needs, Harris would have received critically necessary treatment and therapy that would have spared his life.

49.     As a result of Sgt. Johnson and Correctional Officers Mason, Craft, and McQuirter's cruel and depraved acts or omissions, Harris suffered unnecessary and wanton infliction of pain, suffering, anguish, and distress that culminated in his death.

50.     Further, even after Sgt. Johnson and Correctional Officers Mason, Craft, and

McQuirter finally responded, they allowed Harris to remain on the floor of his cell until 6:00 A.M. the following morning when he was finally taken to the infirmary.

51.    Warden Stewart is the chief policymaker of Holman Correctional Facility. With deliberate indifference to the serious medical needs of inmates while in custody, Defendant Stewart failed to develop and implement adequate policies and procedures for the handling of inmates with serious health conditions requiring emergency medical attention and failed to adequately train staff with the foreseeable result that inmates such as Harris would not receive appropriate treatment, care, and medication.

52.    Stewart had actual or constructive notice the policies and procedures for the training of staff on handling inmates with serious and life-threatening medical conditions were inadequate, yet she chose to retain the inadequate program.

53.    Warden Raybon, Lt. Bolar, and Lt. Dailey are responsible for the operation of the segregation unit at Hollman Correctional Facility. With deliberate indifference to the serious medical needs of inmates, Defendants Raybon, Bolar, and Dailey failed to adequately train and supervise staff on the handling of inmates with serious health conditions requiring emergency medical attention with the foreseeable result

that inmates such as Harris would not receive appropriate treatment, care, and medication.

54.    Defendants Raybon, Bolar, and Dailey had actual or constructive notice the training and supervision of staff on handling inmates with serious and life-threatening medical conditions were inadequate, yet they chose to retain the inadequate program.

55.    With deliberate indifference to Harris's serious medical needs, and while acting under color of state law nurse Garrick and Long knowingly failed or purposefully refused to assess and identify signs and symptoms that Harris was in acute medical distress and failed to report or notify the facility physician, Dr. Patrick Arnold, of Harris's condition or need for medical intervention.

56.    Dr. Patrick Stewart is the chief policymaker of the infirmary at Holman Correctional Facility. With deliberate indifference to the serious medical needs of inmates while in custody, Defendant Stewart failed to develop and implement adequate policies, procedures, customs and practices for the handling of inmates such as Harris with serious health conditions requiring emergency medical attention

and/or failed to adequately train staff with the foreseeable result that inmates such as Harris would not receive appropriate treatment, care, and medication.

57.     Patrick had actual or constructive notice the policies, procedures, customs and practices for the training of staff on handling inmates with serious and life-threatening medical conditions were inadequate, yet he chose to retain the inadequate program.

58.     All defendants, acting under the color of state law, with deliberate indifference to Harris's serious medical needs, inflicted or caused to be inflicted cruel and unusual punishment upon Harris in violation of the Eighth Amendment to the United States Constitution.

59.     All defendants acted with intent to violate Harris's constitutional rights or with reckless disregard of those rights, justifying punitive damages against Stewart, Raybon, Dailey, Bolar, Johnson, Mason, Craft, McQuirter, Garrick, Long, Arnold, and Corizon.

### V.     First Cause of Action  - Against Defendants Johnson, Mason, Craft, McQuirter, and Fictitious Defendants FAILURE TO PROVIDE ADEQUATE MEDICAL CARE

60.     Plaintiff hereby incorporates by reference counts one (1) through fifty-nine

(59) of the proceeding paragraphs as if fully set forth herein.

61.    The Plaintiff suffered from an acute and emergent serious medical condition.

62.    Defendants were notified of Plaintiff's serious medical needs by Plaintiff and other inmates on the segregation unit.

63.    Upon having actual or constructive knowledge that Plaintiff's was in acute medical distress, Defendants Johnson, Mason, Craft, and McQuirter had a duty to immediately notify assigned health care staff.

64.    With deliberate indifference to Harris, while acting under color of state law, Defendants Johnson, Mason, Craft, and McQuirter purposefully failed or refused to notify assigned health care staff, or otherwise take steps to make sure that Harris received medical care for his serious medical need, thus depriving Plaintiff of life-saving emergency medical treatment.

65.    As a direct and proximate result of the acts or omissions of defendants Johnson, Mason, Craft, and McQuirter, Plaintiff suffered unnecessary and wanton infliction of pain, suffering, anguish, and distress that culminated in his death.

66.    While acting under the color of state law within the meaning prescribed by 42

U.S.C. § 1983, defendants Johnson, Mason, Craft, and McQuirter, deprived Plaintiff of his right to be free from cruel and unusual punishment guaranteed by the Eighth and Fourteenth Amendments to the Constitution of the United States in violation of 42 U.S.C. § 1983, 1988, and the Alabama Wrongful Death Statute §6-5-410.

## VI.    Second Cause of Action  - Against Defendants Stewart, Raybon, Dailey, and Bolar and Fictitious Defendants
## FAILURE TO HIRE, TRAIN, AND SUPERVISE

67.    Plaintiff hereby incorporates by reference counts one (1) through fifty-nine (59) of the proceeding paragraphs as if fully set forth herein.

68.    The Plaintiff suffered from an acute and emergent serious medical condition.

69.    Defendants were notified of Plaintiff's serious medical needs by Plaintiff and other inmates on the segregation unit.

70.    Upon having actual or constructive knowledge that Plaintiff's was in acute medical distress, Defendants Johnson, Mason, Craft, and McQuirter had a duty to immediately notify assigned health care staff, or to otherwise make sure that Harris received medical care for his serious medical need.

71.     Stewart, Raybon, Dailey, and Bolar had a duty to hire, train, and supervise staff who were competent to timely respond to an inmate's pleas for emergency medical help and alert appropriate medical care providers.

72.     Stewart, Raybon, Dailey, and Bolar had a duty to hire, train, and supervise staff who were competent to ensure medical staff responded in a timely manner to render critical life-saving medical assistance to an inmate's request for emergency medical help.

73.     Stewart, Raybon, Dailey, and Bolar had a duty to supervise staff in such a manner as to prohibit the possession, sale, and distribution of illicit drugs at Hollman Correctional Facility.

74.     Stewart, Raybon, Dailey, and Bolar had actual or constructive knowledge the training program adopted by Hollman Correctional Facility to ensure a timely response to an inmate's emergency medical needs was inadequate but chose to adopt the program anyway.

75.     Stewart, Raybon, Dailey, and Bolar had actual or constructive knowledge that the illicit drug trade at Hollman Correctional Facility was rampant where guards

were complicit in fostering an environment conducive to the illegal use of illicit drugs by inmates.

76.    With deliberate indifference to Harris, Defendants Stewart, Raybon, Dailey, and Bolar failed to adequately hire, train, and supervise competent staff to timely respond to inmates such as Harris critical medical needs to ensure the provision of life saving care and treatment.

77.    With deliberate indifference to Harris, Defendants Stewart, Raybon, Dailey, and Bolar failed to adequately supervise staff to ensure inmates such as Harris were not given carte blanch access to illicit drugs.

78.    As a direct and proximate result of the acts or omissions of defendants Stewart, Raybon, Dailey, and Bolar, Plaintiff suffered unnecessary and wanton infliction of pain, suffering, anguish, and distress that culminated in his death.

79.    While acting under the color of state law within the meaning prescribed by 42 U.S.C. § 1983, defendants Stewart deprived Plaintiff of his right to be free from cruel and unusual punishment guaranteed by the Eighth and Fourteenth Amendments to the Constitution of the United States in violation of 42 U.S.C. § 1983.

### VII.   Third Cause of Action  - Against Defendants Johnson, Mason, Craft,

## <u>McQuirter and Fictitious Defendants</u>
## <u>WRONGFUL DEATH</u>

80.    Plaintiff hereby incorporates by reference counts one (1) through fifty-nine (59) of the proceeding paragraphs as if fully set forth herein.

81.    The Plaintiff suffered from an acute and emergent serious medical condition.

82.    Defendants were notified of Plaintiff's serious medical needs by Plaintiff and other inmates on the segregation unit.

83.    Upon having actual or constructive knowledge that Plaintiff's was in acute medical distress, Defendants Johnson, Tate, and Bennett had a duty to immediately notify assigned health care staff, or to otherwise make sure that Harris received medical care for his serious medical need.

84.    While acting under color of state law, Defendants Johnson, Mason, Craft, and McQuirter negligently and wantonly purposefully failed or refused to notify assigned health care staff, or to otherwise make sure that Harris received medical care for his serious medical need thus depriving Plaintiff of life-saving emergency medical treatment.

85.    Defendants Johnson, Mason, Craft, and McQuirter's acts or omissions were

willful, malicious, in bad faith, beyond his or her authority or under a mistaken interpretation of the law.

86.     As a direct and proximate result of the acts or omissions of defendants Johnson, Mason, Craft, and McQuirter, Plaintiff suffered unnecessary and wanton infliction of pain, suffering, anguish, and distress that culminated in his death.

### VIII.  Fourth Cause of Action  - Against Defendant Stewart, Raybon, Dailey, Bolar, and Fictitious Defendants WRONGFUL DEATH

87.     Plaintiff hereby incorporates by reference counts one (1) through fifty-nine (59) of the proceeding paragraphs as if fully set forth herein.

88.     The Plaintiff suffered from an acute and emergent serious medical condition.

89.     Defendants were notified of Plaintiff's serious medical needs by Plaintiff and other inmates on the segregation unit.

90.     Upon having actual or constructive knowledge that Plaintiff's was in acute medical distress, Defendants Johnson, Craft, Mason, and McQuirter had a duty to immediately notify assigned health care staff, or to otherwise make sure that Harris received medical care for his serious medical need.

91.     Stewart, Raybon, Dailey, and Bolar had a duty to hire, train, and supervise staff who were competent to timely respond to an inmate's pleas for emergency medical help and alert appropriate medical care providers, or to otherwise make sure that Harris received medical care for his serious medical need.

92.     Stewart, Raybon, Dailey, and Bolar had a duty to hire, train, and supervise staff who were competent to ensure medical staff responded in a timely manner to render critical life-saving medical assistance to an inmate's request for emergency medical help.

93.     Stewart, Raybon, Dailey, and Bolar had actual or constructive knowledge the training program adopted by Hollman Correctional Facility to ensure a timely response to an inmate's emergency medical needs was inadequate but chose to adopt the program anyway.

94.     While acting under color of state law, Defendant Stewart, Raybon, Dailey, and Bolar negligently and wantonly failed to adequately hire, train, and supervise competent staff to timely respond to inmates such as Harris critical medical needs to ensure the provision of life saving care and treatment.

95.     Defendants Stewart, Raybon, Dailey, and Bolar's acts or omissions were

willful, malicious, in bad faith, beyond his or her authority or under a mistaken interpretation of the law.

96.     As a direct and proximate result of the acts or omissions of defendant Stewart, Raybon, Dailey, and Bolar, Plaintiff suffered unnecessary and wanton infliction of pain, suffering, anguish, and distress that culminated in his death.

## IX.   Sixth Cause of Action  - Against Defendants Garrick, Long, and Fictitious Defendants
## FAILURE TO PROVIDE ADEQUATE MEDICAL CARE

97.     Plaintiff hereby incorporates by reference counts one (1) through fifty-nine (59) of the proceeding paragraphs as if fully set forth herein.

98.     The Plaintiff suffered from an acute and emergent serious medical condition.

99.     Defendants Garrick and Long observed Plaintiff was in distress and had a serious medical need.

100.   Defendants Garrick and Long while acting under color of state law, and with deliberate indifference failed to properly assess, document, and report Harris signs, symptoms, and complaints to a licensed physician. Said defendants further failed to provide Harris necessary medical care for his serious medical need.

101.   As a direct and proximate result of the acts or omissions of defendants Garrick and Long, Plaintiff suffered unnecessary and wanton infliction of pain, suffering, anguish, and distress that culminated in his death.

102.   While acting under the color of state law within the meaning prescribed by 42 U.S.C. § 1983, defendants Johnson, Mason, Craft, and McQuirter, deprived Plaintiff of his right to be free from cruel and unusual punishment guaranteed by the Eighth and Fourteenth Amendments to the Constitution of the United States in violation of 42 U.S.C. § 1983, 1988, and the Alabama Wrongful Death Statute §6-5-410.

## X.   Seventh Cause of Action  - Against Defendants Patrick Arnold FAILURE TO HIRE, TRAIN, AND SUPERVISE

103.   Plaintiff hereby incorporates by reference counts one (1) through fifty-nine (59) of the proceeding paragraphs as if fully set forth herein.

104.   The Plaintiff suffered from an acute and emergent serious medical condition.

105.   Defendants Garrick and Long observed Plaintiff was in distress and had a serious medical need.

106.   Defendants Garrick and Long while acting under color of state law, and with deliberate indifference failed to properly assess, document, and report Harris signs,

symptoms, and complaints to a licensed physician to ensure the provision of life saving care and treatment, and said defendants further failed to provide Harris necessary medical care for his serious medical need.

107.   Defendant Arnold had a duty to hire, train, and supervise staff who were competent to properly recognize, assess, document, and report inmates, such as Harris's, signs, symptoms and complaints of distress to a licensed physician.

108.   Defendant Arnold had a duty to hire, train, and supervise staff to ensure they were competent and responded in a timely and appropriate manner to an inmate, such as Harris's, request for medical care.

109.   Defendant Arnold had actual or constructive knowledge the training and supervision of subordinate health care givers, such as Garrick and Long, to ensure a timely and medically appropriate response to an inmate's medical needs was inadequate but failed to correct the constitutionally inadequate and deficient policies.

110.   With deliberate indifference to Harris, Defendant Arnold failed to adequately hire, train, and supervise staff, such as Garrick and Long, to properly recognize, assess, document, and report inmates, such as Harris's, signs, symptoms and complaints of distress to ensure the provision of life saving care and treatment.

111.   As a direct and proximate result of the acts or omissions of defendant Arnold, Plaintiff suffered unnecessary and wanton infliction of pain, suffering, anguish, and distress that culminated in his death.

112.   While acting under the color of state law within the meaning prescribed by 42 U.S.C. § 1983, defendants Stewart deprived Plaintiff of his right to be free from cruel and unusual punishment guaranteed by the Eighth and Fourteenth Amendments to the Constitution of the United States in violation of 42 U.S.C. § 1983.

## XI.    Eighth Cause of Action  - Against Defendants Garrick and Long and Fictitious Defendants
### WRONGFUL DEATH

113.   Plaintiff hereby incorporates by reference counts one (1) through fifty-nine (59) of the proceeding paragraphs as if fully set forth herein.

114.   The Plaintiff suffered from an acute and emergent serious medical condition.

115.   Defendants Garrick and Long observed Plaintiff was in distress and had a serious medical need.

116.   Defendants Garrick and Long failed to properly assess, document, and report Harris signs, symptoms, and complaints to a licensed physician. Said defendants further failed to provide Harris necessary medical care for his serious medical need.

117.   Defendants Garrick's and Long's acts or omissions were willful, malicious, in bad faith, beyond his or her authority or under a mistaken interpretation of the law.

118.   As a direct and proximate result of the acts or omissions of defendants Garrick and Long, Plaintiff suffered unnecessary and wanton infliction of pain, suffering, anguish, and distress that culminated in his death.

### XII.   <u>Ninth Cause of Action  - Against Defendant Arnold and Fictitious Defendants</u>
### <u>WRONGFUL DEATH</u>

119.   Plaintiff hereby incorporates by reference counts one (1) through fifty-nine (59) of the proceeding paragraphs as if fully set forth herein.

120.   The Plaintiff suffered from an acute and emergent serious medical condition.

121.   Defendants Garrick and Long observed Plaintiff was in distress and had a serious medical need.

122.   Defendants Garrick and Long failed to properly assess, document, and report Harris signs, symptoms, and complaints to a licensed physician to ensure the provision of life saving care and treatment. Said defendants further failed to provide Harris necessary medical care for his serious medical need.

123.   Defendant Arnold had a duty to hire, train, and supervise staff who were competent to properly recognize, assess, document, and report inmates, such as Harris's, signs, symptoms and complaints of distress to a licensed physician.

124.   Defendant Arnold had a duty to hire, train, and supervise staff to ensure they were competent and responded in a timely and appropriate manner to an inmate, such as Harris's, request for medical care.

125.   Defendant Arnold had actual or constructive knowledge the training and supervision of subordinate health care givers, such as Garrick and Long, to ensure a timely and medically appropriate response to an inmate's medical needs was inadequate but failed to correct the constitutionally inadequate and deficient policies.

126.   Defendant Arnold failed to adequately hire, train, and supervise staff, such as Garrick and Long, to properly recognize, assess, document, and report inmates, such

as Harris's, signs, symptoms and complaints of distress to ensure the provision of life saving care and treatment.

127.   As a direct and proximate result of the acts or omissions of defendant Arnold, Plaintiff suffered unnecessary and wanton infliction of pain, suffering, anguish, and distress that culminated in his death.

### XIII.  Tenth Cause of Action  - Against Defendant Corizon AGENCY

128.   Plaintiff hereby incorporates by reference counts one (1) through fifty-nine (59) of the proceeding paragraphs as if fully set forth herein.

129.   Corizon is the legal entity that all times pertinent to this Complaint employed Defendants Garrick, Long, and Arnold.

130.   Corizon maintained an employer and employee relationship with the aforementioned defendants and reserved the right to control the manner of the said defendants' conduct.

131.   The acts and conduct of Defendants Garrick, Long, and Arnold were committed in the line and scope of their employment in furtherance of the operation of Corizon.

132.   Corizon is vicariously liable for the acts and conduct of the Defendants herein

named above.

## XIV.   Eleventh Cause of Action  - Against Defendants Garrick and Long and Fictitious Defendants
## MEDICAL MALPRACTICE

133.   Plaintiff hereby incorporates by reference counts one (1) through fifty-nine (59) of the proceeding paragraphs as if fully set forth herein.

134.   The Plaintiff suffered from an acute and emergent serious medical condition.

135.   Defendants Garrick and Long observed Plaintiff was in distress and had a serious medical need.

136.   Defendants Garrick and Long had a duty to follow the standard of reasonable care, skill, and diligence in their care and treatment of Harris that is used by similarly situated health care providers in the same general line of practice.

137.   Defendants Garrick and Long negligently breached that duty by failing to:  (a) failing to properly identify Harris was in need for urgent medical treatment; (b) failing to properly assess, document, and report Harris signs, symptoms, and complaints to a licensed physician; (c) and failing to identify provide Harris with necessary medical care for his serious medical need.

138.   Defendants Garrick's and Long's acts or omissions were willful, malicious, in bad faith, beyond his or her authority or under a mistaken interpretation of the law.

139.   As a direct and proximate result of the acts or omissions of defendants Garrick and Long, Plaintiff suffered unnecessary and wanton infliction of pain, suffering, anguish, and distress that culminated in his death.

## XV.   Twelfth Cause of Action  - Against Defendant Arnold, Corizon, and Fictitious Defendants
### Medical Malpractice

140.   Plaintiff hereby incorporates by reference counts one (1) through fifty-nine (59) of the proceeding paragraphs as if fully set forth herein.

141.   The Plaintiff suffered from an acute and emergent serious medical condition.

142.   Defendants Garrick and Long observed Plaintiff was in distress and had a serious medical need.

143.   Defendants Garrick and Long failed to properly assess, document, and report Harris signs, symptoms, and complaints to a licensed physician to ensure the provision of life saving care and treatment. Said defendants further failed to provide Harris necessary medical care for his serious medical need.

144.   Defendant Arnold and Corizon had a duty to follow the standard of reasonable care, skill, and diligence in their care and treatment of Harris that is used by similarly situated health care providers in the same general line of practice.

145.   Defendant Arnold and Corizon negligently breached that duty by failing to: hire, train, and supervise staff who were competent to properly recognize, assess, document, and report Harris's, signs, symptoms and complaints of medical distress to a licensed physician to ensure Harris received appropriate and life-saving medical care.

146.   Defendants Arnold's and Corizon's acts or omissions were willful, malicious, in bad faith, beyond his or her authority or under a mistaken interpretation of the law.

147.   As a direct and proximate result of the acts or omissions of defendant Arnold, Plaintiff suffered unnecessary and wanton infliction of pain, suffering, anguish, and distress that culminated in his death.

## XVI. **General Prayer for Relief Applicable to all Counts**:

**WHEREFORE, PREMISES CONSIDERED**, the plaintiff prays for the following relief against all defendants, separately and severally:

A.      Award him compensatory and punitive damages.

B.      Reasonable attorney's fees, court cost and expenses; and

C.      Such other, further relief as appears reasonable and just.

Respectfully submitted,


/s/ Charles C. Tatum, Jr._____
Charles C. Tatum, Jr. (TAT009)
Ctatum7@aol.com
/s/Seth L. Diamond_____
Seth L. Diamond (DIA009)
sethdiamond@sethdiamondlaw.com

**Of Counsel:**
Charles C. Tatum, Jr. P.C.
105 19TH Street West
Jasper, AL 35501
Ph: (205) 387-0708
Fax: (205) 265-2920

**PLAINTIFF DEMANDS TRIAL BY STRUCK JURY**

**SERVE DEFENDANTS VIA CERTIFIED MAIL AT**

**Terry Raybon**
Holman 3700
Atmore, AL 36503-3700

**Sandra Dailey**
Holman 3700
Atmore, AL 36503-3700

**Regina Bolar**
Holman 3700
Atmore, AL 36503-3700

**Rashun Johnson**
Holman 3700
Atmore, AL 36503-3700

**Kenneth Mason**
Holman 3700
Atmore, AL 36503-3700

**Tracy Craft**
Holman 3700
Atmore, AL 36503-3700

**Nathan McQuirter**
Holman 3700
Atmore, AL 36503-3700

**Ramona Garrick**
Holman 3700
Atmore, AL 36503-3700

**Arthur Long**
Holman 3700
Atmore, AL 36503-3700

**Patrick Arnold**
866 Ross Road
Atmore, AL 36502

**Corizon Health, Inc.**
2 North Jackson St. STE 605
Montgomery, AL 36104

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 31, 2019, filed the above and foregoing with the Clerk of the Court using the CM/ECF system which will send an email notification of such filing to the following:

Todd E. Hughes
Assistant Attorney General
Counsel for Defendants
501 Washington Avenue
Montgomery, AL 36130
thughes@ago.state.al.us

/s/Seth L. Diamond
Of Counsel